UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID POSES,<br><br>               Plaintiff,<br><br>        -against-<br><br>HEALTH CARE NAVIGATOR LLC, PRVT, INC.,<br>THE TUNNEY EXPERIENCE MARKETING<br>COMPANY, LLC, APRICITY RESOURCES, LLC,<br>and HARRIS SCHWARTZBERG,<br><br>               Defendants. | Case No. 7:19-cv-8075<br><br>**COMPLAINT** |

Plaintiff David Poses ("Poses"), by his attorneys, Kudman Trachten Aloe LLP, alleges for his complaint against defendants Health Care Navigator LLC ("HCN"), PRVT, Inc. ("PRVT"), The Tunney Experience Marketing Company, LLC ("Tunney Marketing"), Apricity Resources, LLC ("Apricity"), and Harris Schwartzberg ("Schwartzberg") as follows:

### PRELIMINARY STATEMENT

1.      This is an action seeking redress for defendants' multiple violations of the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the New York State Human Rights Law ("NYSHRL").

### THE PARTIES

2.      Poses is an individual residing in Cold Spring, New York.

3.      Schwartzberg is an individual residing in Armonk, New York.

4.      HCN is a Delaware limited liability company with its principal place of business located in White Plains, New York. HCN owns and/or oversees multiple healthcare businesses (e.g. nursing homes; assisted living residences; physical, occupational and speech therapy centers; and hospice care centers) in numerous states.

5.      PRVT is a Delaware corporation with its principal place of business located in White Plains, New York. PRVT is a private aviation charter venture that Schwartzberg formed in 2013, arising out of transaction with a business known as Jet Demands. On its website, PRVT represents that it is "owned by a private company with over $1 Billion of combined annual revenue and a 50-year history."

6.      Tunney Marketing is a Delaware limited liability company with its principal place of business located in White Plains, New York. Tunney Marketing was first conceptualized in the summer of 2017 and then formed by Schwartzberg in October 2017. Tunney Marketing was contemplated to be a joint venture between Schwartzberg and artist Peter Tunney that would build a business centered on commercially exploiting Mr. Tunney's intellectual property.

7.      Apricity is a Delaware limited liability company. Formed in mid-2016 and wholly owned by HCN, Apricity is essentially a captive "third-party" provider of marketing, business development, and other support services to the HCN business units and/or other health care related businesses under Schwartzberg's control.

8.      Non-party The Schwartzberg Companies of New York, Inc. ("Schwartzberg N.Y.") is a New York corporation with its principal place of business located in White Plains, New York. Schwartzberg N.Y. is in the business of owning and/or operating health care facilities.

9.      Non-party Red Oak Acquisitions, LLC ("Red Oak") is a Delaware limited liability company with its principal place of business located in White Plains, New York. Red Oak is a Schwartzberg-controlled entity that is used as a vehicle for the purchase of health care related facilities and/or properties.

2

10.     All of the entity defendants and non-party entities referenced above are either solely owned or otherwise controlled, directly or indirectly, by Schwartzberg and have at all relevant times been directly or indirectly subject to Schwartzberg's operational management.

11.     At all times relevant herein, Schwartzberg personally determined and controlled Poses's employment terms, status, responsibilities, and authority.

12.     At all times relevant herein, HCN had at least fifty (50) employees.

13.     At all times relevant herein, Apricity had at least fifty (50) employees.

14.     From 2012 through July 26, 2018, Schwartzberg, the entity defendants, and the non-party entities were substantially operated as a single enterprise (the "Schwartzberg Enterprise").

15.     Poses was employed in White Plains, New York, by one or more of the entity defendants and/or non-party Schwartzberg Enterprise entities, initially from 2003 to 2006, and then from 2012 to July 26, 2018.

16.     During his employment, Poses contemporaneously performed services for multiple entity defendants and non-party Schwartzberg Enterprise entities, overwhelmingly at the direction and/or designation of Schwartzberg, regardless of which entity was his formal employer.

17.     At all times relevant herein, the entity defendants conducted themselves in connection with Poses's employment as his joint employers.

18.     At all times relevant herein, Schwartzberg was an "employer" of Poses's within the meaning of the FMLA.

19.     At all times relevant herein, Schwartzberg was an "employer" of Poses's within the meaning of the NYSHRL.

20.     At all relevant times herein, Schwartzberg had an ownership interest in the entity defendants and non-party Schwartzberg Enterprise entities for which Poses worked.

21.     At all relevant times herein, Schwartzberg had the authority to supervise and control Poses's conditions of employment.

22.     At all relevant times herein, Schwartzberg had the authority to hire and fire Poses.

## JURISDICTION AND VENUE

23.     This Court has original and supplemental subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367(a) because Poses alleges federal claims and the non-federal claims are so related to the federal claims that they form the same case or controversy.

24.     Defendants are subject to the personal jurisdiction of this Court under CPLR 301 because they all reside in New York.

25.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because all defendants reside in this District and the events giving rise to Poses's claims occurred in this District.

## RELEVANT FACTS

### I.   Poses's History of Mental Health Struggles

26.     Since his young childhood, and continuing through the present, with little in the way of occasional interruption, Poses has been under medical and psychiatric care, and receiving treatment (including medications) for clinical depression and anxiety disorders.

27.     In his late adolescent years, Poses suffered from opioid drug addiction for which he received rehabilitation treatment. It has been more than a decade since he relapsed, about four years prior to his 2012 return to work for the Schwartzberg Enterprise.

28.     Although subject to varying degrees of mitigation by psychotherapy and prescribed medication, Poses's mental illness substantially limits many, if not most, of his major life activities: concentrating, communicating, sleeping, eating, socializing, and general functioning.

The degree and frequency of its limiting effects on his life activities at a given period of time depends on his life circumstances and how well treatment enables him to cope with those circumstances.

29.    One symptom of Poses's illness is his constant suffering of extreme, albeit unfounded, anxiety about his abilities to achieve success in his endeavors, be they business or personal. Paradoxically, this anxiety has the effect of driving Poses to high levels of achievement in certain spheres—i.e., functioning at apparently high levels, but often at the expense of other functioning. However, even when that is so, Poses's functionality can be fragile because he is by reason of his illness particularly susceptible to certain triggers to his losing capacity and/or suffering other debilitating symptoms of depression and anxiety disorder. One such trigger would be a harsh or sustained attack on his worth, feeding his clinical, though not proportionately rational, anxiety about his self-worth.

30.    There are a number of stereotypes known to be held about persons who suffer from depression and anxiety disorder.

31.    One such stereotype, recognized as such in published reports and papers, is that persons with this mental illness are weak, as being unduly averse to conflict and unable to adequately (if at all) confront others when circumstances warrant that they do so.

32.    A common stereotype held about persons who have a past history of drug addiction is that such persons are forever untrustworthy.

33.    Poses's anxiety levels rise and his functionality is susceptible to being reduced when he is treated in accordance with such discriminatory bias based on stereotyping relating to his depression and anxiety disorder and past history of drug addiction.

II.     **Schwartzberg's Attitudes about Mental Illness**

34.     Schwartzberg self-identifies as a fierce and tireless advocate for causes relating to mental health issues.

35.     Schwartzberg believes that persons who are afflicted with depression and other mental illnesses are frequent victims of negative stereotyping.

36.     Schwartzberg has in a public speech contended that "presenteeism," which he defined as "when you have something on your mind and you're not really working," among the mentally ill results in massive costs to employers and the economy.

37.     Schwartzberg's speech reflects his predisposition to view employees with mental illness as economic problems—i.e., employees that are given to distraction, unfocused, and therefore unreliable and inferior employees.

38.     That predisposition constitutes prejudice, bias, and stereotyping.

III.    **Poses's Employment with the Schwartzberg Enterprise Entities**

39.     Between 2003 and 2006, Poses performed marketing services for health care facilities that Schwartzberg directly or indirectly owned. To the best of his recollection, Poses's formal employer during that tenure was Schwartzberg N.Y. and his title was (for most if not all of that tenure) that of Communications Director.

40.     When Poses returned to work for the Schwartzberg Enterprise in 2012, his formal employer was HCN and his initial title started as Senior VP of Business Development but soon changed to Senior VP of Marketing and Business Development.

41.     Poses then performed (among other things) many of the same functions and had substantially the same responsibilities that he had had in 2006, when he left Schwartzberg N.Y.

42.     In 2013, Schwartzberg tapped Poses to run PRVT.

43.   Soon thereafter, Schwartzberg told Poses to present himself as being its Chief Executive Officer.

44.   Poses signed documents as PRVT's CEO, had check writing authority, and had a PRVT credit card that was used for company business expenditures (not only as related to his personal services for the company).

45.   Schwartzberg also made Poses a member of PVRT's Board of Directors.

46.   While Poses was performing services for PRVT, HCN nonetheless paid his salary and bonuses.

47.   Poses received no separate compensation from PRVT.

48.   Poses also simultaneously (while performing services for PRVT) continued to perform his job as Senior VP of Marketing and Business Development, initially through services for HCN and/or Schwartzberg N.Y., and, upon its formation in mid-2016, under the umbrella of Apricity as provider of those services to the HCN and/or Schwartzberg N.Y. healthcare businesses.

49.   During the same period, Schwartzberg also assigned Poses to perform services for Red Oak in the nature of consultancy and presentation in connection with promoting investment in healthcare business entities controlled (or contemplated to be controlled) by Schwartzberg.

## IV.   Schwartzberg's Knowledge of Poses's Struggles Depression and Anxiety Disorder and Past History of Drug Addition

50.   At all times relevant herein, Schwartzberg has known (through communications that Poses had with him) that Poses has, and has a history of, anxiety and depressive disorders.

51.   For example, in an April 2, 2012, email exchange concerning Schwartzberg's involvement with creating a mental health awareness program at the Byram Hills school district in Armonk, New York, Poses wrote: "I was crippled by depression at various times in my life and

am so heartened by what you're doing." Schwartzberg responded (in part): "Hey buddy, thank you so much for all of the thought and time. You obviously understand how important this is to me!"

52.    At all times relevant herein, Schwartzberg has also known (through conversations that Poses had with him over time) that Poses has a history of disabling drug addiction.

53.    For example, on October 24, 2017, Poses sent Schwartzberg an email advising that he would be away for two days to make a public presentation in Vermont to discuss his past struggles with drug addiction: "I have the Burlington drug thing tomorrow and Thursday. Can't say I'm excited to tell thousands of strangers about the years when I was on drugs and suicidal, but I believe in the cause, so . . . ." Schwartzberg responded the following day: "Good luck in VT! It is amazing that you'll be telling your story to those around you as it provides hope and some guidance."

54.    On October 28, 2017, Schwartzberg emailed Poses to ask how his speech went. Poses replied, writing that "it went great" and included in his report that he also had a closed-door session with the governor, senator, and police chiefs, and that he had given two television news interviews, providing Schwartzberg a web link to view one of those. Schwartzberg appears to have viewed the interview; he replied, "Amazing!!"

55.    In a statement filed with the U.S. Equal Employment Opportunity Commission ("EEOC") in response to a Charge of Discrimination filed by Poses, HCN asserted that:

(a) Schwartzberg, upon learning in early May 2018 that Poses had taken medical leave for mental illness, was "stunned . . . because he was . . . learning for the first time of Mr. Poses' alleged mental illness;"

(b) "Mr. Poses never disclosed . . . to Mr. Schwartzberg that he had struggled with drug addiction issues;" and

(c) "[Poses's] mental illness and addiction history was simply something Mr. Poses had

never discussed with Mr. Schwartzberg."

**V.     Increase in Poses's Job Duties and Responsibilities and Harassment by Schwartzberg**

56.     In the summer of 2017, Schwartzberg tasked Poses with developing and running a

joint venture with artist Peter Tunney for the commercial exploitation of Mr. Tunney's intellectual

property.

57.     Poses diligently attended to the assignment.

58.     In September 2017, Schwartzberg spoke to Poses about his wanting to soon

transition Poses from his work (for Apricity) in connection with nursing and healthcare to giving

his full attention to PRVT and Tunney Marketing.

59.     In October 2017, Apricity President Matt Horwitz discussed with HCN President

Eric Roth a plan for Poses's soon and permanent move away from the nursing and healthcare

business (in order that he focus on PRVT and Tunney Marketing).

60.     The change in Poses's role was soon thereafter communicated to senior executives

at healthcare facilities serviced by Apricity, HCN, and/or other Schwartzberg-affiliated entities.

61.     During the fall of 2017, and continuing until early May 2018, Schwartzberg became

increasingly abusive of Poses, subjecting him to hostile and humiliating treatment in ways that

play to stereotypes about his disabilities and record of disability.

62.     As stated, Schwartzberg had assigned Poses the task of negotiating terms of

agreement with Peter Tunney for the Tunney Marketing enterprise. However, largely as a result of

Schwartzberg's wanting to drive a hard bargain while undermining any bargain by being dishonest

in his dealings with both (upon information and belief) Mr. Tunney and with Poses, the deal he

wanted to be made was not progressing toward getting signed.

63.     Schwartzberg's reaction to that circumstance was to viciously attack Poses as being too timid, weak, and confrontation averse by, for example, screaming at Poses, repeatedly calling him a "pussy," and otherwise subjecting him to humiliation in front or within close earshot of other Schwartzberg Enterprise employees.

64.     Schwartzberg also harassed Poses by purposely trying to destabilize him by making accusations against Poses that he knew (and that others knew) to be false.

65.     Schwartzberg also commented that former drug addicts could never be trusted, a comment that, although made with reference to another, Poses believes was intended to further "push his buttons."

66.     As a consequence of Schwartzberg's increasingly abusive and harassing treatment, Poses's stress level rose so high that he could no longer tolerate his work environment.

67.     Poses's on the job circumstances became debilitating. His psychiatrist became alarmed. Poses's psychiatrist advised Poses that he regarded his work conditions as "toxic" and responsible for the acute and flare-up of depression Poses was experiencing. He advised that Poses's continuing to report to his job would present an imminent and serious threat to his health. On May 2, 2018, he instructed Poses to take a period of leave.

## VI.    Poses Requests and Is Approved for FMLA Leave

68.     On May 3, 2018, Poses asked for and was granted a leave of absence under the FMLA.

69.     He left work during that day.

70.     Although not specifically discussed in ADA terms, Poses's leave was needed as an accommodation of his disorder so that he would be enabled to return to perform his jobs essentially running PRVT and Tunney Marketing.

71.     Mr. Roth and other entity defendant decision makers undoubtedly recognized that Poses sought leave so that, after a curative period, he could return to doing his job.

72.     When Poses told Mr. Roth that he was going to take FMLA leave, Mr. Roth immediately encouraged Poses to not merely take leave, but to instead look for a job elsewhere. He presented this idea as being for Poses's own good.

73.     Mr. Roth acknowledged (in his words) that it was no secret that Schwartzberg had been abusing Poses and that his treatment of Poses had been "inexcusable."

74.     Mr. Roth said to Poses that while Schwartzberg is generally difficult to work with, his treatment of Poses was "much worse" than his treatment of anyone else, and that Poses should consider resigning because work should not have this effect on him.

75.     Poses told Mr. Roth that, when not being abused, he loved his job and wanted it to work. Poses said that Schwartzberg, as someone who publicly presents himself as a champion of people with depression, should be able to fix the problem.

76.     In response, Mr. Roth cautioned Poses not to put much stock in Schwartzberg's public persona in that regard.

77.     During Poses's leave, Mr. Roth instructed him, first by phone and then in a text message and follow on emails, not to contact any of his work colleagues, saying that his communications were "causing issues."

78.     In point of fact, Poses had not during his leave prior to Mr. Roth's instruction had *any* business-related communications with anyone within the Schwartzberg Enterprise other than (a) to respond to Mr. Roth's inquiry about an intellectual property law project that Poses had been doing for Tunney Marketing, and (b) having reached out to Kim Grogan (Vice President of

Marketing) because of an alert that he had received on his phone about his Tunney Marketing email account.

79.     Mr. Roth indicated that Poses should communicate only with Julie Gutzmann (Chief Financial Officer), Claire Moran (Human Resources), or him.

## VII.    Poses Is Demoted Upon Returning to Work Following FMLA Leave

80.     Poses had expected to be cleared to return to work on Monday, June 4, 2018.

81.     Poses wanted to be brought up to speed so he could hit the ground running.

82.     Therefore, on May 31, 2018, Poses sent Mr. Roth an email requesting to speak.

83.     In response, Mr. Roth told Poses to call Ms. Moran. Poses did so.

84.     Ms. Gutzmann joined the call and told Poses that when he would return, he would go back to his earlier job as Senior Vice President of Marketing, reporting to Mr. Horwitz.

85.     That was a job that Poses had essentially been on-the-ground phased out of about 6+ months before he took his leave.

86.     It was not the job he had during the 6 months before his leave doing the work that he had been doing for Tunney Marketing and PRVT.

87.     Ms. Gutzmann indicated that the decision was final and intended to be permanent.

88.     Ms. Gutzmann at that time said to Mr. Poses that the decision about his role had been a group decision made after he commenced his leave.

89.     Mr. Poses had not before then been told of the decision.

90.     The news that Poses would not be permitted to return to his positions running PRVT and Tunney Marketing, especially coming from Ms. Gutzmann (and then Mr. Roth) but not Schwartzberg (to whom he had reported in those roles), was both very surprising and enormously distressing to Poses.

91.     Poses's psychiatrist then refused to clear him to return to work until he would receive clarity concerning the change in his job.

92.     Mr. Roth also asked Poses not to start back at work until he first would speak with him in person.

93.     Poses arranged for a lunch meeting with Mr. Roth, who informed him that Ms. Gutzmann would be joining them.

94.     In this meeting, Poses received shifting explanations for what had occurred and when. In this conversation, the decision that Ms. Gutzmann had previously described to Poses as a group decision came now to be instead described as a unilateral decision by Schwartzberg.

95.     In the very same meeting Poses was told, with strange inconsistency, that Schwartzberg's decision to change Poses's role was first made *both* before and after he went out on leave.

96.     In that meeting, Mr. Roth and Ms. Gutzmann acknowledged that Schwartzberg had treated Poses in an inexcusable manner.

97.     They also proposed as an alternative to his returning to the marketing position that he take a severance package and move on.

98.     They were not specific about the amount of the package and Poses did not ask what they had in mind.

99.     Poses had not invited any discussion about his leaving and regarded (and still regards) mention of a severance package as indicating that his return to work would not be a welcome one.

100.    Poses made it clear to defendants that he was uninterested in a severance package because he wanted to return to his position running PRVT and Tunney Marketing as he had done before taking FMLA leave.

101.    In a June 6, 2018, email, Poses advised Mr. Roth that his psychiatrist had cleared him to return to work and that he was very unhappy about the company's decision to change his job rather than to restore him to the role he had been in immediately prior to his leave.

102.    Poses expressly stated that he believed that the refusal to restore him to his last job not only violated the FMLA, but also constituted discrimination against him because of his medical issue.

103.    Poses stated to Mr. Roth that he would do the marketing job as re-assigned, and do it well, *but under protest*, while he would explore his options.

104.    Mr. Roth responded by falsely denying that the assignment was not to the same job Poses had when he took leave.

105.    Mr. Roth also expressed concern about what Poses meant by "under protest" and "exploring his options."

106.    When Poses reported to work on June 7, 2018, Mr. Roth again changed the plan, telling Poses for the first time that he would no longer report to Mr. Horwitz (as Ms. Gutzmann had indicated, and as he had when his job had in the past been Senior Vice President of Marketing) but would instead report to Mr. Roth.

**VIII.    Poses Complains About Discriminatory and Retaliatory Treatment**

107.    On June 18, 2018 (i.e., seven business days after Poses reported to his new position), Poses's lawyer sent Mr. Roth a letter, copy annexed hereto as Exhibit A, charging that the entity defendants violated the ADA by harassing and otherwise discriminating against Poses and retaliating against him for exercising his rights under the ADA, FMLA, and NYSHRL. The

letter demanded that the entity defendants immediately and fully remedy their violations by, in part, restoring Poses to the position of functional responsibility, authority, status, and opportunity that he had when he ran PRVT and Tunney Marketing just prior to his leave.

108.    The letter charged on Poses's behalf, and he believes it to be true, that Schwartzberg's abusive treatment of Poses was directed at him because of his anxiety and depressive disorders.

109.    Rather than to remedy their discrimination and retaliation, the entity defendants instead stepped up their reduction of his status and attendant humiliation of Poses within the Schwartzberg Enterprise.

110.    On information and belief, these reductions in Poses's status were retaliatory against him for having charged that his rights under the FMLA, ADA, and NYSHRL had been violated.

111.    Upon information and belief, these reductions in Poses's status constituted efforts to push him to quit.

112.    Thus, for example, the fact is that despite his title, Poses was been "returned" to a position having less authority and status than the one he held when he at one time functioned as Senior Vice President of Marketing.

113.    Then, even from that position, Poses was *de facto* demoted insofar as his subordinate (who holds the title of Vice President of Marketing) was allowed, if not encouraged, to direct Poses's teams' work without consultation or clearance from Poses—including, with regard to providing services to PRVT.

114.    Upon his return from leave, Poses had been barred by Mr. Roth from having any involvement with of or even inquiring about PRVT.

115.   Despite Mr. Roth's statement to Poses on June 6, 2018, that he had been and would remain "responsible for HCN's marketing team," Mr. Roth responded dismissively to Poses's complaints about not having been restored to having even that responsibility.

116.    Mr. Roth took no remedial action, instead telling Poses that he should not focus on his authority and status.

IX.   **Poses Is Terminated in Retaliation for his Complaints**

117.   On or about June 23, 2018, HCN and/or one or more of the entity defendants learned through counsel that Poses was anticipating soon filing a Charge of Discrimination with the EEOC.

118.   When the conditions of humiliating diminishment of Poses's status persisted, his lawyer wrote a letter to the entity defendant's lawyer in which he complained on Poses's behalf about his being further *de facto* demoted. Poses's lawyer asserted that Poses's further diminution of authority and Mr. Roth's cavalier disregard of his objections in that regard constituted continuing discrimination and retaliation against him because of his complaints of discrimination. A copy of that letter, dated July 19, 2018, is annexed hereto as Exhibit B.

119.   On July 24, 2018, Poses signed a form of EEOC Charge and sent it the next day by FedEx for July 26 delivery to his lawyer for his expected filing of the Charge on that day.

120.   In the morning of July 26, 2018, Ms. Gutzmann, joined by in-house attorney Ray Mulry, advised Poses in person that he was fired, effective immediately.

121.   Poses was not afforded the opportunity to gather his personal belongings to take with him.

122.   According to a schedule that accompanied the form of release that Ms. Gutzmann handed Poses in connection with a conditional offer of severance, Poses was the only person in the "decisional unit" whose employment was terminated.

123.    Ms. Gutzmann told Poses that his termination had nothing to do with his performance and that the conditional offer of severance was a way of thanking Poses for his years of service.

124.    A few other employees of the Schwartzberg Enterprise who had marketing jobs were also let go at essentially the same time.

125.    Upon information and belief, no one with senior executive responsibilities for PRVT or Tunney Marketing was fired at or near that time.

126.    Poses believes that he was fired because of his disability and complaints of discrimination (as well as his insistence on being restored to his most previous job upon his return from leave) and that the firing of other marketing personnel was done as a cover for justifying his termination as an elimination of marketing functions—i.e., to manufacture support for a pretextual explanation for his termination.

127.    Upon information and belief, the entity defendants discriminated against Poses based on his disability and retaliated against him with regard to the terms and conditions of his employment from about September 2017 until he was fired on July 26, 2018, and with regard to his being fired on July 26, 2018, for having opposed their discriminatory and retaliatory conduct.

128.    The aforementioned discriminatory and retaliatory conduct has and continues to cause Poses humiliation, emotional pain and suffering, and has substantially reduced his opportunities for personal and professional development and advancement.

129.    Defendants forbade Poses's former coworkers from speaking to Poses.

130.    This caused Poses to lose friends at a time when he needed them the most.

131.    Upon information and belief, defendants retaliated against Poses with regard to his terms and conditions of employment as stated above and ultimately fired him because of his

exercise of his rights to take FMLA leave and to demand restoration to his previous job upon returning from FMLA leave.

**X.    Poses Exhausted His Administrative Remedies**

132.    Prior to commencing this action, on or about July 27, 2018, Poses timely filed a Charge of Discrimination with the EEOC, asserting that defendants discriminated and retaliated against him in violation of the ADA.

133.    On or about June 3, 2019, the EEOC issued Poses a Notice of Suit Rights.

134.    This action is timely because it was filed within ninety (90) days of the EEOC's issuance of the Notice of Suit Rights.

## FIRST CAUSE OF ACTION
### Family and Medical Leave Act – Failure to Restore
### (Against All Defendants)

135.    Poses repeats and realleges the allegations contained in paragraphs 1 through 134.

136.    Defendants were at all relevant times Poses's employer within the meaning of the FMLA (29 U.S.C. § 2611(4)).

137.    The FMLA (29 U.S.C. § 2614(a)(1)) mandates that an employee who takes medical leave pursuant to the Act shall be entitled on return from such leave to be restored to the "position of employment held by the employee when the leave commenced" or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

138.    On May 3, 2018, Poses asked for and was granted a leave of absence under the FMLA.

139.    When Poses returned from his period of FMLA leave and reported to work on June 7, 2018, defendants did not restore Poses to the specific position he held in his employment as of the time that his leave commenced.

140.    When Poses returned from his period of FMLA leave and reported to work on June 7, 2018, defendants did not then (or at any time thereafter) restore Poses to a position equivalent, within the meaning of the FMLA, to the position he held in his employment as of the time that his leave commenced.

141.    The FMLA (29 U.S.C. § 2615(a)(2)) provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

142.    Defendants' failure to restore Poses to the specific position he held as of the time that his leave commenced, or an equivalent position, was a violation of the FMLA.

143.    The FMLA (29 U.S.C. § 2617(a)(1)(B)) provides that Poses is entitled to "such equitable relief as may be appropriate, including employment, reinstatement, and promotion."

144.    Poses has suffered and continues to suffer a loss of wages, salary, employee benefits, and other compensation as a result of said violations.

145.    Poses is entitled under the FMLA (29 U.S.C. § 2617(a)(1)(A)(i) and (ii)) to recover damages and for said losses with interest thereon.

146.    Poses is entitled under the FMLA (29 U.S.C. § 2617(a)(1)(A)(iii)) to recover an additional amount equal to his damages and interest as liquidated damages.

147.    In addition to reinstatement and restoration and monetary and liquidated damages, the FMLA (29 U.S.C. § 2617)) provides that Poses is entitled to recover "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action be paid by the defendant."

### SECOND CAUSE OF ACTION
**Family and Medical Leave Act – Retaliation**
**(Against All Defendants)**

148.    Poses repeats and realleges the allegations contained in paragraphs 1 through 134.

149.     The FMLA (29 U.S.C. § 2615(a)(2)) provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

150.     On July 26, 2018, defendants terminated Poses's employment in retaliation for his (a) taking FMLA leave, (b) complaining about defendants' failure to restore him to his prior or an equivalent position; and (c) complaining about his retaliatory demotion.

151.     Defendants' retaliatory termination of Poses's employment was a violation of the FMLA.

152.     Poses has suffered and continues to suffer a loss of wages, salary, employee benefits, and other compensation as a result of said unlawful retaliation.

153.     Poses is entitled under the FMLA (29 U.S.C. § 2617(a)(1)(A)(i) and (ii)) to recover damages and for said losses with interest thereon.

154.     Poses is entitled under the FMLA (29 U.S.C. § 2617(a)(1)(A)(iii)) to recover an additional amount equal to his damages and interest as liquidated damages.

155.     In addition to monetary and liquidated damages, the FMLA (29 U.S.C. § 2617(a)(3)) provides that Poses is entitled to recover "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action be paid by the defendant."

### THIRD CAUSE OF ACTION
### Americans with Disabilities Act – Discrimination
### (Against the Entity Defendants)

156.     Poses repeats and realleges the allegations contained in paragraphs 1 through 134.

157.     The entity defendants were at all relevant times Poses's employer within the meaning of the ADA (42 U.S.C. § 12111(5)).

158.     The ADA (42 U.S.C. § 12112(a)) provides that it is unlawful to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment."

159.    Poses is a qualified individual within the meaning of the ADA (42 U.S.C. §

12111(8)) based on his depression and anxiety disorder and past history of drug addiction.

160.    The entity defendants discriminated against Poses in the terms of his conditions of

his employment by failing to accommodate his conditions and subjecting him to hostile and

humiliating treatment based on his disabilities (i.e., his depression and anxiety disorder and past

history of drug addiction) in violation of the ADA (42 U.S.C. § 12112(a)).

161.    Poses has suffered and continues to suffer a loss of wages, salary, employee

benefits, and other compensation as a result of said unlawful discrimination.

162.    Poses has suffered and continues to suffer humiliation and emotional pain and

suffering as a result of said unlawful discrimination, which has substantially reduced his

opportunities for personal and professional development and advancement.

163.    Poses is entitled to punitive damages because the entity defendants' unlawful and

intentional discrimination was done with malice and with reckless indifference to Poses's federally

protected rights.

164.    In addition to monetary and punitive damages, the ADA (42 U.S.C. § 12205)

provides that Poses may recover "a reasonable attorney's fee, including litigation expenses, and

costs."

## FOURTH CAUSE OF ACTION
### Americans with Disabilities Act – Retaliation
### (Against the Entity Defendants)

165.    Poses repeats and realleges the allegations contained in paragraphs 1 through 134.

166.    The ADA (42 U.S.C. § 12203(a)) provides that "[n]o person shall discriminate

against any individual because such individual has opposed any act or practice made unlawful by

this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

167.    The entity defendants retaliated against Poses in violation of the ADA (42 U.S.C. § 12203(a)) by terminating his employment in response to his complaints about defendants' discrimination against him based on his disabilities (i.e., his depression and anxiety disorder and past history of drug addiction).

168.    Poses has suffered and continues to suffer a loss of wages, salary, employee benefits, and other compensation as a result of said unlawful retaliation.

169.    Poses has suffered and continues to suffer humiliation and emotional pain and suffering as a result of said unlawful retaliation, which has substantially reduced his opportunities for personal and professional development and advancement.

170.    Poses is entitled to punitive damages because the entity defendants' unlawful and intentional retaliation was done with malice and with reckless indifference to Poses's federally protected rights.

171.    In addition to monetary and punitive damages, the ADA (42 U.S.C. § 12205) provides that Poses may recover "a reasonable attorney's fee, including litigation expenses, and costs."

**FIFTH CAUSE OF ACTION**
**New York State Human Rights Law – Discrimination**
**(Against All Defendants)**

172.    Poses repeats and realleges the allegations contained in paragraphs 1 through 134.

173.    Defendants were at all relevant times Poses's employer within the meaning of the NYSHRL (N.Y. Exec. Law. § 292).

174.     Defendants discriminated against Poses based on his disabilities (i.e., his depression and anxiety disorder and past history of drug addiction) in violation of the NYSHRL (N.Y. Exec. Law. § 296(1)(a)).

175.     Poses has suffered and continues to suffer a loss of wages, salary, employee benefits, and other compensation as a result of said unlawful discrimination.

176.     Poses has suffered and continues to suffer humiliation and emotional pain and suffering as a result of said unlawful discrimination, which has substantially reduced his opportunities for personal and professional development and advancement.

## SIXTH CAUSE OF ACTION
### New York State Human Rights Law – Retaliation
### (Against All Defendants)

177.     Poses repeats and realleges the allegations contained in paragraphs 1 through 134.

178.     Defendants were at all relevant times Poses's employer within the meaning of the NYSHRL (N.Y. Exec. Law. § 292).

179.     The NYSHRL (N.Y. Exec. Law. § 296(7)) provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

180.     Defendants retaliated against Poses in violation of the NYSHRL (N.Y. Exec. Law. § 296(1)(e) and (7)) by terminating his employment in response to his complaints about defendants' discrimination against him based on his disabilities (i.e., his depression and anxiety disorder and past history of drug addiction).

181.     Poses has suffered and continues to suffer a loss of wages, salary, employee benefits, and other compensation as a result of said unlawful retaliation.

182.     Poses has suffered and continues to suffer humiliation and emotional pain and suffering as a result of said unlawful retaliation, which has substantially reduced his opportunities for personal and professional development and advancement.

**SEVENTH CAUSE OF ACTION**
**New York State Human Rights Law – Aiding and Abetting**
**(Against Schwartzberg)**

183.     Poses repeats and realleges the allegations contained in paragraphs 1 through 134.

184.     The NYSHRL (N.Y. Exec. Law. § 296(6)) provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

185.     Schwartzberg actually participated in defendants' above-described violations of the NYSHRL.

186.     Schwartzberg shared the discriminatory and retaliatory intent and purpose of defendants' above-described violations of the NYSHRL.

187.     Schwartzberg is therefore personally liable for aiding and abetting defendants' above-described violations of the NYSHRL.

**JURY TRIAL DEMAND**

188.     Poses demands a trial by jury on all issues in this action.

**WHEREFORE**, Poses demands judgment in its favor as follows:

a)   on the First Cause of Action, reinstating and restoring Poses to the positions he occupied, and the duties and responsibilities he performed, in his employment prior to taking FMLA leave in May 2018, and awarding compensatory and liquidated damages in an amount to be determined at trial;

b)   on the Second Cause of Action, awarding compensatory and liquidated damages in an amount to be determined at trial;

c)  on the Third Cause of Action, awarding compensatory and punitive damages in an amount to be determined at trial;

d)  on the Fourth Cause of Action, awarding compensatory and punitive damages in an amount to be determined at trial;

e)  on the Fifth Cause of Action, awarding compensatory damages in an amount to be determined at trial;

f)  on the Sixth Cause of Action, awarding compensatory damages in an amount to be determined at trial;

g)  on the Seventh Cause of Action, awarding compensatory damages in an amount to be determined at trial;

h)  awarding reasonable attorneys' fees, interest, costs, and expenses, to the extent permitted by law; and

i)  granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        August 28, 2019

By: _____
    Gary Trachten
    David N. Saponara
    KUDMAN TRACHTEN ALOE LLP
    Empire State Building
    350 Fifth Avenue, 68th Floor
    New York, New York 10118
    Tel: (212) 868-1010

    *Attorneys for Plaintiff David Poses*